UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JOHNNY WAYNE SKIDMORE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:13-081-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Johnny Wayne Skidmore ("Skidmore" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 10, 11] Skidmore argues that the administrative law judge ("ALJ") assigned to his case erred by failing to give sufficient weight to the opinion of one of his treating physicians in concluding that he is not disabled under the Social Security Act ("Act"). Skidmore seeks reversal of the ALJ's decision and an award of benefits. Alternatively, he requests remand for further consideration of his claims. However, the Commissioner contends that the ALJ's decision was proper and should be affirmed.

For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Skidmore.

**I.**

On May 12, 2010, Skidmore applied for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Act, and Supplemental Security Income ("SSI") under Title XVI of the Act. [*See* Administrative Transcript, p. ; hereafter, "Tr., p. 169-181.] He alleged a disability beginning July 14, 2009. [Tr., pp. 169] Skidmore's applications were denied initially and upon reconsideration. On November 22, 2011, Skidmore, along with his attorney and Vocational expert ("VE") William Ellis, appeared before ALJ Tommye C. Mangus for an administrative hearing in Middlesboro, Kentucky. [Tr., pp. 53-68] On December 19, 2011, ALJ Mangus issued her opinion, concluding that Skidmore was not entitled to an award of benefits under either title of the Act.[1]

Skidmore was thirty-two years old at the time the administrative hearing before ALJ Magnus. [Tr., pp. 46, 57] He has completed high school and has past relevant work as a car detailer, supermarket clerk, and construction laborer. Skidmore has also worked in the logging industry as a dozer and skidder operator. [Tr., pp. 41] Skidmore originally claimed to be disabled as a result of anxiety, lower back problems, torn meniscus in his right knee, a history of substance abuse, and obesity. [Tr., p. 41-42] After reviewing the record and testimony

---

1      As correctly noted in the Commissioner's supporting memorandum, Skidmore was last insured for purposes of claiming DIB on September 30, 2010. [Tr., 165, 191] DIB may not be paid unless a claimant is disabled when he or she meets the insured status requirements of 42 U.S.C. § 423(c). Therefore, Skidmore was required to establish that he was disabled between the alleged onset of his disabling conditions (July 14, 2009), and September 30, 2010, to be entitled to an award of DIB.

Further, SSI benefits are not payable for the month (or any months) prior to the month in which the SSI application is filed. 42 U.S.C. § 1382(c)(7). Because Skidmore's applications were filed in May 2010, he would not be eligible for SSI benefits prior to June 2010 even if he establishes that he is entitled to such benefits. [Record No. 11, p. 2, fn. 2]

presented during the administrative hearing, the ALJ concluded that Skidmore suffered from severe impairments of degenerative changes of his right knee, lumbar spine, and thoracic spine. [Tr., pp. 41] Notwithstanding these impairments, ALJ Mangus found that Skidmore retained the residual functional capacity ("RFC") to perform a wide range of medium work that requires "no more than occasional bending, stooping or crawling." [Tr., p. 43]

Based on the testimony of VE Ellis, the ALJ determined that Skidmore could not perform past relevant work. [Tr., p. 46] However, after considering the claimant's age, education, work experience, and RFC, she found that Skidmore could perform other work that exists in significant numbers in the national economy. [Tr., p. 47] Based on this finding, the ALJ concluded that Skidmore was not disabled. As a result of the ALJ's assessment, Skidmore was denied DIB and SSI benefits. [Tr., pp. 47-48]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that he is not engaged in substantial gainful employment at the time of the disability application 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 784 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Therefore, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

A.  **The ALJ Gave Appropriate Weight to Dr. Sidhu's Medical Assessment of Skidmore's Physical Impairments.**

On October 19, 2011, Dr. Kirpal Sidhu completed a form captioned, "Medical Assessment of Ability to do Work-Related Activities[,]" apparently at the request of Skidmore's attorney. Through this form, Dr. Sidhu indicates that Skidmore cannot lift or carry more than 10 pounds occasionally. Further, he concluded that Skidmore could only stand and/or walk

approximately four hours in an eight-hour day and could only do so without interruption for one-half hour. Dr. Sidhu reached a similar conclusion regarding Skidmore's ability to sit. And he indicated that the Claimant must avoid: vibrations, reaching, pushing/pulling, working at heights and around moving machinery.[2] Dr. Sidhu attributed these limitations to an earlier diagnosed degenerative disc disease and meniscus tear of the Claimant's right knee, and Skidmore's complaints of right knee pain. [Tr., pp. 548-550]

While the ALJ fully addressed Dr. Sidhu's history of treatment and the above conclusions in her opinion, she also addressed Skidmore's other claimed disabilities. The ALJ concluded that Skidmore's anxiety, mild obesity and history of substance abuse did not cause "more than minimal limitation in [his] ability to perform basic mental work activities and are therefore nonsevere." [Tr., p. 42] And although the Claimant does not challenge this finding, the ALJ's analysis of these claimed limitations is relevant to the primary argument that Skidmore raises in this civil action. As noted in ALJ Magnus' opinion:

> Drug abuse, past and present, constitutes the primary theme throughout [Skidmore's] medical file, characterized by drug-seeking emergent care, criminal trafficking charges, license suspension for DUI, and dismissal from care for doctor-shopping. . . .

[*Id.*]

---

2   The ability to perform medium work involves lifting no more than 50 pounds at one time, with frequent lifting or carrying objects weighing up to 25 pounds. Additionally, a full range of medium work requires standing or walking, of and on, for a total of approximately six hours in an eight-hour workday. 20 C.F.R. §§ 404.1567(c), 416.927(c); Social Security Ruling 83-10. The limitations imposed by Dr. Sidhu would preclude the Claimant from performing medium work even with the additional limitations accepted by the ALJ.

The ALJ also made the following observations in concluding that Skidmore's medically determinable impairments could not reasonably cause the symptoms alleged:

> The claimant's employment history and details of his departure from the workforce, as well as pervasive evidence of profiteering and drug-seeking behaviour, undermines his general credibility. . . . Furthermore, the specter of pervasive substance abuse strongly designates the historical pursuit of medical care for narcotic analgesia rather that treatment for genuinely disabling medical impairments. In fact, appointment notes as far back as 2002 document diagnosed Oxycontin abuse, while emergency room records from May 2005 describe the "Abuse of opiates & Benzos" . . . . More recently, in June 2009, treating osteopath Jeremy Jackson, DO, observed a "history of drug-related charges for drug trafficking" while refusing to administer narcotic pain medication and, again, toxicology testing revealed marijuana and slew of unprescribed pain medications. The claimant initiated services with Dr. Jackson in May 2009 following the arrest of his pain management doctors in Nashville and his subsequent dismissal by another physician for doctor-shopping. Lastly, in April 2010, despite supposedly unrelenting and severe pain, the claimant flatly rejected Dr. Jackson's offer of muscle relaxers and anti-inflammatories following a refusal to issue narcotics because of repeatedly failed drug screens. However, emergency room records from May 2010 clearly delineate the claimant's multi-layered drug-seeking strategy . . .

(Citations to Tr. omitted.) [Tr., p. 44] Based, in part, on the foregoing analysis, the ALJ concluded that the Claimant's assertions "regarding their intensity, frequency and limiting effects are not credible[3]" to the extent the assertions were inconsistent with her RFC assessment.

As noted above, rather than challenge these findings, Skidmore contends that the ALJ improperly failed to assign appropriate weight to the opinion of Dr. Kirpal Sidhu, one of his treating physicians. [Record No. 10, pp. 10-16] More specifically, he claims that the ALJ should have afforded the opinion (prepared at counsel request for his disability claims) "great

---

3  Where, as here, a claimant's statements about the intensity, persistence and limiting effects of pain or other symptoms are not supported by objective medical evidence, the ALJ must make assess his or her credibility based on the entire record.

-7-

weight," rather than "marginal weight." However, the limited weight given to Dr. Sidhu's opinion is fully justified under the facts presented.[4]

Dr. Sidhu was not Skidmore's only treating physician. Skidmore was initially treated by Dr. Ronald S. Dubin of the Kentucky Orthopedic Clinic beginning in March 2010, following a motor vehicle accident. At the time this treatment was provided, the Claimant had tenderness in the midline thoracic and lumbar areas of his spine. He also exhibited right knee pain. Objective testing confirmed a basis for the pain, but not to the extent later claimed by Skidmore.

An April 2, 2010, MRI of Skidmore's thoracic spine indicated findings consistent with Scheuermann's disease sequel and small protrusions cranially. [Tr., p. 349] Further, the MRI of the lumbar spine region indicated moderate disc dessication with mild central stenosis with moderate foraminal stenosis at the L4-L5 level, moderate disc desiccation and broad bulge with protrusion at the L5-S1 level that was consistent with Skidmore's left-side symptoms. [Tr., pp. 347-348] The MRI of his right knee confirmed a lateral meniscus tear. [Tr., p. 346]

Dr. Dubin recommended physical therapy and conservative treatment for approximately three weeks, beginning April 6, 2010. On April 27, 2010, Dr. Dubin recommended arthroscopic surgery to repair the meniscus tear. And although Skidmore requested a referral to a pain clinic (consistent with narcotic drug-seeking behavior), that request was declined by Dr. Dubin. [Tr., p. 341]

---

4      An ALJ must consider several factors when weighing medical opinions. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). As a general rule, the ALJ gives "more weight to the opinion of a source who has examined [a claimant] than to the opinion of a source who has not." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).

Dr. Andrew Koerber performed a consultative examination regarding Skidmore's complaints of low back and right knee pain on September 11, 2010.[5] At the time of this examination, Skidmore was not taking pain medication and was not seeing a primary care physician. [Tr., 390] Dr. Koerber also observed that Skidmore did not use a cane and did not have problems getting on or off the examination table. The Claimant was able to squat and walk on his heels, toes, and in tandem without difficulty. Likewise, he exhibited full strength in both legs and arms with decreased sensation in his left leg. And while Skidmore exhibited mild tenderness in the thoracic and lumbar spinal regions, he had no lower extremity edema. [Tr., pp. 392-395]

Based on his physical examination and evaluation of x-rays which showed only mild degenerative changes at the L4-L5 region, Dr. Koerber opined that Skidmore had the ability to sit, stand, move about, lift, carry, and handle objects. [Tr., p. 393] Additionally, notwithstanding the Claimant's statement regarding his use of a cane, Dr. Koerber concluded that such was not medically necessary. Thus, Dr. Koerber's only medically significant findings in September 2010 were: decreased sensation in the Claimant's left leg and mind decreased flexion in his lumbar spine. [*Id.*] And while the ALJ gave less weight to Dr. Koerber's report, she properly noted that "his benign findings are, nonetheless, consistent with his valid clinical observations." [Tr., p. 46]

---

5      Dr. James Ramsey, a state agency doctor, reviewed the Claimant's medical records on February 28, 2011, and affirmed the earlier December 2010 assessment which concluded that Skidmore was capable of performing medium work. [Tr., pp. 90-91, 95-102]

Skidmore began seeing Dr. Sidhu on a regular basis in October 2010. In addition to being inconsistent with the objective medical records and the opinions of Drs. Dubin, Koerber, and Ramsey, the October 19, 2011, Medical Assessment prepared by Dr. Sidhu at counsel's request is also inconsistent with the observations recorded in his own treatment records which pre-date the assessment. Likewise, Dr. Sidhu's conclusions are inconsistent with the daily activities Skidmore was able to perform and which are outlined at page 4-5 of the ALJ's opinion. [Tr., pp. 42-43]

Dr. Sidhu initially recommended heat to treat Skidmore's lower back, flexion exercises, and medication to conservatively treat his right knee. Two months later, Dr. Sidhu recommended surgery to repair the meniscus tear in Skidmore's right knee. Surgery, however, was not performed. In February 2011, Dr. Sidhu indicated that Skidmore could sit, stand, and walk, although he experienced some pain. Further, he observed that the Claimant could lift and carry with restrictions and could manipulate objects with his hands. Dr. Sidhu saw the Claimant on a near-monthly basis through September 2011.[6] During that time, he observed that Skidmore had a good range of motion in his right knee and no gross neurologic deficits. Dr. Sidhu continued to treat the Claimant with Neurontim, Percocet, Tylenol, and Motrin. [Tr., pp. 453-454, 460, 545] As noted in the ALJ's opinion, Skidmore's complaints of acute pain are not supported by Dr. Sidhu's treatment notes which do not reflect the severity of the Claimant's condition described in the October 2011 Medical Assessment.

---

6  The ALJ points out in her opinion that Skidmore's monthly appointments with Dr. Sidhu coincided with his prescription refills.

As this Court has acknowledged on many occasions, a treating source's medical opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p, 1996 WL 374188 (Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record). However, an "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 509 (6th Cir. 2006) (per curiam) (quoting *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs."). Moreover, the regulations provide that a physician's statement regarding whether a claimant is "disabled" or "unable to work" does not mean that the claimant is disabled. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

The opinions contained in Dr. Sidhu's October 2011 Medical Assessment are not supported by objective criteria or other proper documentation. ALJ Magnus did not err here because, as noted above, Dr. Sidhu's opinion was not only inconsistent with the opinions of other treating and consulting physicians, it was inconsistent with the objective medical evidence in the record and inconsistent with Dr. Sidhu's earlier opinions. While his attorney does not argue that the ALJ was incorrect in giving little weight to Skidmore's other complaints (*i.e.*, pain, anxiety, drug abuse and addiction, and obesity), the ALJ's analysis of these claims is

relevant to his other findings. Although these other claimed limitations were found to be non-severe, Skidmore's history of drug use – and his ongoing attempts to obtain prescription narcotics from doctors and emergencies on a continuing basis – was relevant in the ALJ's assessment of his credibility and complaints of disabling pain. It is also noteworthy that Dr. Sidhu's opinion is based, in part, on the Claimant's pain allegations. "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence" and "testimony concerning . . . symptoms and limitations [that] is not supported by the evidence of record and is deemed not fully credible." *Collins v. Comm'r of Soc. Sec.*, 357 F. Appx 663, 669-70 (6th Cir. 2009).

### B. The ALJ's Opinion Is Supported by Substantial Evidence.

Although the Claimant argues that substantial evidence does not support the ALJ's determination, he does not identify any particular finding or conclusion that he seeks to challenge for this reason. Where a claimant has failed to specifically identify alleged error, the Sixth Circuit has:

> decline[d] to formulate arguments on [the claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence. Rather, we limit our consideration to the particular points that [the Claimant] appears to raise in [his] brief on appeal.

*Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006); *see also McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation and quotation marks omitted).

After reciting the legal standard applicable to the case, the Claimant's argument consists of the following:

> [i]t is the contention of the Plaintiff under these standards of review that there is not substantial evidence to support the denial of his application for security benefits. The objective medical evidence unequivocally documents that the [Claimant] has several severe conditions which are disabling.

[Record No. 10-1, pp. 17-18] However, "[t]his challenge warrants little discussion, as [Skidmore] has made little effort to develop this argument in [his] brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record." *Hollon*, 447 F.3d at 490-91.

Notwithstanding the imprecise nature of Skidmore's argument, as outlined above, a review of the evidence of record demonstrates that the ALJ's decision is supported by substantial evidence. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *see also Rogers*, 486 F.3d at 241; *Buxton,* 246 F.3d at 772 ("[F]indings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."). Having reviewed the entire record of this matter, the Court finds no error with the ALJ's assessment and analysis of the evidence of record or her determination that the Claimant is not disabled as defined by the Act. Under the facts presented, the "findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772.

## IV.

Although Skidmore suffers from some medical impairments, he has not established that his impairments, either singularly or in combination, are severe enough to warrant a period of

disability, DIB, or SSI.  The ALJ did not err in her evaluation of the evidence.  Viewing the record as a whole, substantial evidence supports ALJ Magnus' determination that Skidmore is not disabled.  Accordingly, it is hereby

**ORDERED** as follows:

(1) Plaintiff Johnny Wayne Skidmore Motion for Summary Judgment [Record No. 10] is **DENIED**.

(2) Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 11] is **GRANTED**.

(3) The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 6th day of January, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge